| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | <u>NOT FOR PUBLICATION</u> |
| ---------------------------------------------------------------x | |
| In re: | Chapter 11 |
| STAGE PRESENCE, INC., | Case No. 12-10525 (ALG) |
| Debtor. | |
| ---------------------------------------------------------------x | |
| STAGE PRESENCE, INC., | |
| Plaintiff, | |
| - against - | |
| GENEVE INTERNATIONAL TRUST,<br>RONALD L. BARTHOLOMEW, and<br>STEPHEN MENNER, | Adv. Proc. No. 12-01561 (ALG) |
| Defendants. | |
| ---------------------------------------------------------------x | |

**MEMORANDUM OF OPINION AND ORDER**

A P P E A R A N C E S:

LAW OFFICE OF DAVID WIMS
Counsel to Stage Presence, Inc., Plaintiff
1430 Pitkin Avenue, 2nd Floor
Brooklyn, NY 11233
    By: David C. Wims, Esq.

ASK LLP
Counsel to Geneve International Trust, Ronald L. Bartholomew, and Stephen Menner,
Defendants
151 West 46th Street, 4th Floor
New York, New York 10036
    By: Edward E. Neiger, Esq.
         Dina Gielchinsky, Esq.


**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding involves the alleged failure of defendants Geneve International Trust ("Geneve"), Ronald L. Bartholomew ("Bartholomew"), and Stephen Menner ("Menner" and, collectively, "Defendants") to fund a television production undertaken by plaintiff and debtor Stage Presence, Inc. ("Plaintiff").  Plaintiff filed an initial complaint against Defendants on April 16, 2012 claiming breach of contract and fraud and seeking to recover $2,204,145.56.  Defendants moved to dismiss the complaint for failure to state a claim and lack of personal jurisdiction over Defendant Geneve.  This Court held in an oral decision on August 6, 2012 that (i) the complaint failed to adequately plead either a contract or fraud claim and (ii) the record did not contain sufficient evidence to allow the Court to decide whether there was personal jurisdiction over Defendants; but (iii) Plaintiff would have leave to amend.

On September 20, 2012, Plaintiff filed an Amended Complaint which appended a three-page contract entitled "Television Production Loan Agreement" (the "Alleged Contract").  Defendants move to dismiss the Amended Complaint on the following grounds: (1) there is no personal jurisdiction over Defendant Geneve; (2) the Amended Complaint does not adequately plead a contract claim; (3) the fraud claim is not pled with particularity as required by Bankruptcy Rule 7009, incorporating F. R. Civ. P. 9(b); and (4) if the contract relied on by Plaintiff is enforceable and sufficiently pled, it contains a "mandatory" arbitration clause.  The Court held a hearing on the motion to dismiss on December 14, 2012, and it is disposed of as follows.

**Background**

The following facts are taken from the Plaintiff's Amended Complaint and are assumed to be true for purpose of this motion.

Plaintiff filed for relief under chapter 11 of the Bankruptcy Code on February 9, 2012. The bankruptcy filing was necessitated by Plaintiff's inability to pay production and labor costs, as well as travel and legal expenses incurred in connection with a TV production called "An Evening of Grace: A Concert for the Children" (the "TV Production"), which was filmed in Washington, D.C. in April of 2010 and aired on the TV channel BET/Centric in May of 2010. Plaintiff alleges that it intended to fund the production costs and expenses through a $5,000,000 loan from Defendant Geneve. It is asserted that Defendants Bartholomew and Menner falsely represented in March and April of 2010 that Defendant Geneve was able and willing to perform under the Alleged Contract and would perform once Plaintiff paid certain "bridge loan fees." From March 24, 2010 onwards, Plaintiff advanced sums totaling $80,000 to Defendants as "bridge loan fees" that would entitle Plaintiff to two $500,000 bridge loans for the TV Production. Plaintiff has provided documents that appear to be three wire transfers totaling $60,000 from Plaintiff to "R L BARTHOLOMEW ATTY/CLIENT TRUS" with a California address. (December 6, 2012 Affidavit of Allen Newman, Docket No. 18) (the "Newman Declaration"). It is alleged that the two $500,000 bridge loans and the loan of $5 million were never made.

On April 4, 2010, Plaintiff and Defendant Geneve entered into the Alleged Contract, which is attached to the Amended Complaint. The Alleged Contract appears to contain the signatures of Plaintiff and of Geneve, which assertedly signed the Alleged Contract through Defendant Bartholomew as "Trustee" with a California address. (Alleged Contract, Docket No. 12.) The Alleged Contract attached states that Geneve agrees to provide Plaintiff with a loan of not less than $5,000,000 plus talent cost overages subject to mutual approval. The loan was for the purposes of producing two television specials: "David Foster and Friends" and "One From

3

Each Island." (*Id.* at paras. 1-2.) Those television specials were scheduled for April 13 and May 15, 2010, respectively. (*Id.* at paras. A, 8.) The Alleged Contract provided that the loan would be repaid in six months and also provided Defendant Geneve with additional rights to compensation, such as the right to be credited as an executive producer of the television specials, VIP tickets, and a 50% share in worldwide profits "in all territories" after the loan was repaid. (*Id.* at paras. 4-5.) The Alleged Contract gave Plaintiff certain rights to delay repayment, provided that the loan would be repaid from "ancillary profits, foreign territories, and all revenue sources from worldwide sales and recoupment . . ." (*id.* at para. 4(c)), and it required Plaintiff to provide Geneve with proof of insurance for the television productions. (*Id.* at para. 8.) Finally, the Alleged Contract contained an arbitration clause: "Any controversy or claim arising out of or relating to this Agreement or the validity, construction or performance of this Agreement or the breach thereof, shall be resolved by arbitration according to the rules and procedures of the American Arbitration Association. . . ." (*Id.* at para. 10.) The Alleged Contract was governed by California law.

On April 13, 2010, according to the Amended Complaint, Plaintiff produced the TV Production, which was broadcast nationally. It is alleged that the loan was never made, Plaintiff was unable to pay substantial amounts for labor, equipment, and supplies, and was eventually sued for these amounts, leading directly to the instant bankruptcy filing.

**Analysis**

The motion to dismiss raises three separate issues: (1) whether personal jurisdiction exists over Geneve; (2) whether the Amended Complaint should be dismissed pursuant to Fed. R. Civ. Proc. 12(b)(6); and (3) whether this matter should be sent to arbitration in accordance with the Alleged Contract's arbitration provision. This decision will address each issue in turn.

*A. Personal Jurisdiction over Defendant Geneve*

In considering a motion to dismiss for lack of personal jurisdiction under Bankruptcy Rule 7012(b), incorporating Fed. R. Civ. Proc. 12(b)(2), the court "accept[s] as true the factual allegations in the complaint and draw[s] all inferences in the plaintiff's favor." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006); *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). A plaintiff must make a prima facie showing that personal jurisdiction exists, *see Thomas*, 470 F.3d at 495, which can be accomplished through "legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (citation and internal quotations omitted).

In an adversary proceeding brought in a bankruptcy case, as Defendants admit, the inquiry regarding personal jurisdiction focuses on whether the defendant has sufficient "minimum contacts" with the United States. (Defendants' Memo of Law, Docket No. 16-1, page 18 n.3.) Once allegations of such contacts are made, the defendant must rebut them "with direct, highly specific testimonial evidence" that the plaintiff does not counter. *Schenker v. Assicurazioni Genereali S.p.A.*, Consol., No. 98–CIV–9186, 2002 WL 1560788, *3 (S.D.N.Y. July 15, 2002); *see also Bluestone Capital Partners, L.P. v. MGR Funds Ltd.*, No. 98–CIV–3128, 1999 WL 322658, *1 (S.D.N.Y. May 20, 1999) (finding plaintiff can make a prima facie showing of personal jurisdiction "even when the moving party makes contrary allegations that place in dispute the factual basis of plaintiff's prima facie case"); *see also North v. Winterthur Assurances (In re North)*, 279 B.R. 845, 852-53 (Bankr. D. Ariz. 2002) ("[T]he Bankruptcy Rules effectively provide for worldwide service of process, limited only by the due process

5

clause of the Fifth Amendment . . . which requires only that the defendant have the requisite minimum contacts with the United States, rather than with the forum state.") (citation and internal quotations omitted); *Cruisephone, Inc. v. Cruise Ships Catering & Servs., N.V. (In re Cruisephone, Inc.)*, 278 B.R. 325, 331 (Bankr. E.D.N.Y. 2002); *Savage & Assocs., P.C. v. Banda 26, S.A. (In re Teligent, Inc.)*, Nos. 01-12974, et al., 2004 WL 724945, at *4 n.11 (Bankr. S.D.N.Y. Mar. 30, 2004). A reviewing court not only evaluates the "minimum contacts" of a foreign defendant, but also assures itself that the exercise of jurisdiction will not offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co., v. Super. Ct. Cal.*, 480 U.S. 102, 113 (1987) (citation and internal quotations omitted); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996).

On the issue of personal jurisdiction over Geneve, Defendants submitted an affidavit from Defendant Bartholomew, the "trustee" of Geneve, affirming that Geneve (i) is a Swiss trust that has not engaged in or solicited any business in the United States and (ii) does not maintain offices, employees, property, or bank accounts in the United States. (November 13, 2012 Declaration of Ronald L. Bartholomew, Docket No. 16-2) (the "Bartholomew Declaration.") However, the affiant then contradicts both assertions by declaring that he was approached for a bridge loan to fund a television production being produced by Plaintiff's president and CEO, Allen Newman ("Newman"), and he "agreed on behalf of Geneve to use our best effort to assist in raising funds for the production. . . ." (*Id.*). There is no dispute that the production was to be made in the United States, and the documents make it clear that Bartholomew's activities on behalf of Geneve took place, at least in part, in California. The contract attached to the Amended Complaint states that it was executed by Bartholomew as trustee for Geneve. Additionally, the Amended Complaint alleges that Defendants Bartholomew and Menner made misrepresentations

6

to Plaintiff – via telephone calls from California to Plaintiff in New York – in order to obtain the "bridge loan fees" and induce Plaintiff to enter into the Alleged Contract. In response to the motion to dismiss, Plaintiff also submitted an affidavit from Newman declaring that (1) the Alleged Contract was negotiated with and signed by Defendant Bartholomew as trustee for Defendant Geneve in California; and (2) Plaintiff wired funds from a New York bank account to Defendant Bartholomew in California as trustee for Defendant Geneve. (Newman Declaration, Docket No. 18). The Newman Declaration provides copies of three wire transfers in support of these assertions.

There is thus no dispute on the record of this motion that Bartholomew acted as trustee for Geneve in the United States in connection with the transaction that is at issue. On the instant record, Plaintiff has made out a prima facie case that personal jurisdiction exists due to the contacts Geneve had with the United States relating to the matters in dispute, and Geneve has failed to rebut that case.

    *B. Sufficiency of the Amended Complaint*

Motions to dismiss are governed by Fed. R. Civ. P. 12(b)(6), made applicable by Bankruptcy Rule 7012(b). A motion to dismiss is "designed to test the legal sufficiency of the complaint, and thus does not require the Court to examine the evidence at issue." *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996), *cert. denied*, 519 U.S. 1007 (1996); *see also Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 58 F. Supp. 2d 228, 236 (S.D.N.Y. 1999). On a Rule 12(b)(6) motion, consideration is limited to the factual allegations in the complaint, including documents attached to the complaint as exhibits or incorporated by reference, matters of which judicial notice may be taken and documents on which the plaintiff relied in bringing suit. *Granite Partners, L.P.*, 58 F. Supp. 2d at 236, citing *Brass v. Am. Film*

*Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  A court may dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *D'Alessio v. N.Y. Stock Exchange, Inc.*, 258 F.3d 93, 99 (2d Cir. 2001).

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Pursuant to the liberal pleading standards of Rule 8, "a plaintiff must disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'"  *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000), quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

In contrast to a claim of breach of contract, a complaint alleging common law fraud must also satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 168 (2d Cir. 2000); *Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996); *Granite Partners, L.P.*, 58 F. Supp. 2d at 257.  Rule 9(b) requires that "in all allegations of fraud, the circumstances constituting the fraud must be stated with particularity."  *Id.* at 236.  The pleadings must adequately specify the statements that were false or misleading, give particulars as to the alleged falsity of the statements, and state the time and place the statements were made and the identity of the persons who made them.  *Id.* at 236; *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992).   Ordinarily, pleadings of fraud cannot be based on information and belief, except where the facts are peculiarly within the opposing party's knowledge, and even then, "the allegations must be accompanied by a statement of facts upon which the belief is founded."  *Granite Partners, L.P.*, 58 F. Supp. 2d at 258-59.

8

*(i)    Breach of Contract Claim[1]*

Defendants assert that the Amended Complaint should be dismissed because the Alleged Contract does not use the same name for the TV Production and, even if it did, there was no "meeting of the minds" as the Alleged Contract did not provide a date on which the loan was to be made, a schedule of payments, or an interest rate. Additionally, Defendants argue that Plaintiff failed to allege its "full performance" under the Alleged Contract, such as the transmittal of proof of insurance and all of the items in the Alleged Contract listed under "Perquisites for Lender," including VIP tickets and access to the television specials and display of Defendant Geneve's logo in the specials. There is no merit to these assertions. The Alleged Contract and Amended Complaint adequately describe the primary obligations of the parties to the Alleged Contract – such as that Geneve agreed to provide $5,000,000 for the television productions and Plaintiff agreed to pay Defendant 50% of the profits. The Alleged Contract also provides that the loan will be repaid upon the earlier of six months and receipt of funds from corporate sponsors, and it provided Defendant Geneve with more than just a repayment of principal – Defendant Geneve would be entitled to 50% of the profits from the TV Production as well as certain perquisites. There is no interest rate for the loan, but it is alleged that Plaintiff paid $80,000 as "bridge loan fees," which could conceivably be prepaid interest on a loan of less than six months.

Defendants also assert that the Alleged Contract attached to the Amended Complaint did not provide funding for Plaintiff's subject production in that the TV Production that Plaintiff produced was named "An Evening of Grace: A Concert for the Children," whereas the Alleged Contract mentioned two television specials – "David Foster and Friends" and "One From Each

---

[1] As confirmed by Plaintiff's opposition to this motion, the contract claim is brought only against Defendant Geneve, and no contractual breach claims are asserted against Defendants Bartholomew and Menner.

9

Island." Plaintiff responds that David Foster was the star of the TV Production, and that the proposed financing as set forth in the Alleged Contract and averred in the Amended Complaint covered a television special to be filmed in Washington, D.C. in April of 2010 and broadcast on the BET/Centric channel. This discrepancy in names is not a basis for dismissal at the pleading stage. After making all inferences in the Plaintiff's favor, as the Court must, the Amended Complaint sufficiently alleges that the document attached to the Amended Complaint is the contract at issue.[2]

The Amended Complaint also sufficiently pleads Plaintiff's performance. There is no requirement in Federal Rule of Civil Procedure 8(a) to plead the non-existence of unmet conditions, affirmative defenses, and counterclaims. *See Ackerley Media Group, Inc. v. Sharp Electronics Corp.*, 170 F. Supp. 2d 445, 453 (S.D.N.Y. 2001) ("[Defendant] believes that an absence of itemized averments of [Plaintiff's] performance is somehow fatal to [Plaintiff's contract] claim. The plain language of Fed. R. Civ. Proc. 9(c) would seem to indicate otherwise. . . ."). Under the governing law of California, the allegation of performance can also be made in general terms. *Durrell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1367 (Cal.App. 4 Dist. 2010). Regarding damages, the Amended Complaint clearly alleges the damages from production costs that the loan from Defendant Geneve was intended to cover, and the Amended Complaint does not need to provide an itemized list of damages at the pleading stage.

The motion to dismiss the claim for breach of contract is denied.

---

[2] The Court notes that an attorney who represents certain creditors who are also members of the unsecured creditors committee in this case has submitted – in the context of a motion in the main bankruptcy case – evidence produced in the course of a separate federal court proceeding. That evidence includes the testimony of Plaintiff's principal, where he declared that the loan transaction was between Defendant Geneve and a third party, which in turn contracted with Plaintiff to undertake the TV Production. While that evidence may or may not be relevant to the eventual merits of this adversary proceeding, the Court declines to look beyond the pleadings and convert this motion to dismiss into a motion for summary judgment.

*(ii)    Fraud Claim*

The second claim for relief in the Amended Complaint asserts a fraud claim against Defendants Bartholomew and Menner. Defendants argue that the Amended Complaint contains no more than a bare, conclusory recitation of the elements of a claim for fraud and is inadequate under Fed. R. Civ. Proc. 9(b). According to Defendants, there is no identification of the "who, what, where, when, and how" of the alleged representations by Bartholomew and Menner and no explanation of why those alleged representations were fraudulent. Defendants also note that the Court stated at the hearing on the original complaint that "you can't state a fraud claim in connection with that contract by simply adding to your contractual cause of action . . . the allegation that, well, they never intended to perform the contract." (*See* Transcript of August 6, 2012 Hearing, Docket No. 14, at page 13, lines 21 to 25.)

As to Defendant Menner, the motion to dismiss under Rule 9(b) is well taken. He is identified in paragraph 12 as an "agent" of Geneve, but he did not sign the Alleged Contract on behalf of Geneve, and he is not connected to the bridge loan fees. Every allegation against Menner has him simply named as acting together with Bartholomew. The Amended Complaint does not plead with sufficient particularity that Menner acted fraudulently, even taking all inferences in Plaintiff's favor.

The allegations are different as to Bartholomew. Bartholomew was the recipient of wire transfers that are alleged to have been "bridge loan fees" leading to the contract for the loan alleged in the Amended Complaint. The Amended Complaint is adequate in pleading that Defendant Bartholomew made representations over the phone to Plaintiff in March and April of 2010, and that they were fraudulent for being made to induce Plaintiff to pay over the "bridge

11

loan fees." The Amended Complaint – unlike the original complaint – provides details of the timing and location of the alleged misrepresentations as well as new factual allegations regarding the "bridge loan fees" that could support an inference that Bartholomew purposefully acted to defraud Plaintiff.

The allegations of the Amended Complaint are adequate to overcome the principle that, under California (and New York) law, "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Erlich v. Menezes*, 21 Cal.4th 543, 551 (Cal. 1999); *see also PI, Inc. v. Quality Prods., Inc.*, 907 F. Supp. 752, 761 (S.D.N.Y. 1995) (an action for fraud "cannot exist when the fraud claim arises out of the same facts as a breach of contract claim with the sole additional allegation that the defendant never intended to fulfill its contractual obligations."). It is well settled that "[t]ort damages have been permitted in contract cases . . . where a contract was fraudulently induced." *Erlich*, 21 Cal.4th at 551-52; *see also Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) ("[A] valid fraud claim may be premised on misrepresentations that were made before the formation of the contract and that induced the plaintiff to enter the contract."); *Quality Prods.*, 907 F. Supp. at 761 (an "action for fraud can be maintained on the basis of allegations that a party made a collateral or extraneous misrepresentation that served as an inducement to the contract."). Taking the allegations of the Amended Complaint as a whole, the Amended Complaint adequately states a fraud claim against Defendant Bartholomew.

### C. Arbitration

Defendants also contend that if the contract attached to the Amended Complaint was a binding contract, it contains a mandatory arbitration provision, requiring that controversies arising out of or relating to the Alleged Contract "shall be resolved by arbitration. . . ." (Alleged

Contract, Docket No. 12, at para. 10.) In opposition, Plaintiff makes the bare assertion that arbitration should not be compelled because (i) the factual record is insufficient to find an agreement to arbitrate and (ii) Defendants have not made a formal motion to compel arbitration.

Admittedly, Defendants' motion to dismiss only requests dismissal, contending that the contract claims are subject to mandatory arbitration only if the Court finds there was a contract. The motion does not specifically request that arbitration be compelled or seek a stay of the action pending arbitration.[3] However, if Geneve made a motion to compel arbitration and represented that it would submit itself to arbitration pursuant to the arbitration provision, it would appear meritorious. Plaintiff has not identified any reason why the Court could fail to grant such a motion. This is a non-core breach of contract claim, and there are few grounds for denying a timely motion to compel arbitration of such a claim where there is a governing arbitration clause. *See MBNA Bank v. Hill*, 436 F.3d 104, 111 (2d Cir. 2006); *U.S. Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re U.S. Lines, Inc.)*, 197 F.3d 631, 636 (2d Cir. 1999) ("The restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages."). Moreover, it does not appear that Geneve waived its arbitration rights merely by moving to dismiss. *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985) ("Given this dominant federal policy favoring arbitration, waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated."); *Sweater Bee by Banff, Ltd. v. Manhattan Indus.*,

---

[3] Since no application for a stay was made and Defendants explicitly requested that the Court rule on their motion to dismiss, the Court has authority to decide the motion to dismiss notwithstanding the arbitration clause. *See Conrad v. Phone Directories Co., Inc.*, 585 F.3d 1376, 1386 (10th Cir. 2009) ("[Movant] asked the court to 'dismiss plaintiff's complaint.' This is a request for judicial relief in the form of dismissal, rather than a request that the court refer the case to an arbitrator to decide the issues.") (citation omitted); *United Elec., Radio & Mach. Workers of America v. Oliver Corp.*, 205 F.2d 376, 385 (8th Cir. 1953); *Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 797 (10th Cir. 1995).

13

*Inc.*, 754 F.2d 457, 463 (2d Cir. 1985) (holding that the filing of a motion to dismiss did not constitute waiver of a contract's arbitration clause).

**Conclusion**

For the aforementioned reasons, the motion to dismiss is granted only to the extent of dismissing the Amended Complaint against Defendant Menner. The motion to dismiss the contract claim against Defendant Geneve is denied, as is the motion to dismiss the fraud claims against Defendant Bartholomew. As noted above, Defendant Geneve may move to refer the contract claim against it to arbitration.

IT IS SO ORDERED.

Dated: New York, N.Y.                **s/Allan L. Gropper**
      January 17, 2013              UNITED STATES BANKRUPTCY JUDGE